Bertram Harnett, J.
We rule here that failure pf a New York City home improvement solicitor contractor to have the requisite city license may invalidate its construction contract, but does not bar it from quantum meruit recovery not exceeding the contract price.
A. THE PROBLEM.
When a two-family house in Brooklyn, owned by H. Mabel Frewil Corp. (Frewil), was damaged by fire on January 1,1971, the corporation entered into a form-type written contract with Lindner Appraisal Corp. (Lindner). It provided for Lindner as “ contractor ” to prepare a report on the damage and submit it to the appropriate fire insurance company, to repair the. building by supplying all the labor, material and services needed in accordance with and within the amount of the insurance adjustment, and to remove any violations placed on the structure by the New York City Department of Buildings as a result of the fire. The agreed price for work to be done was to be the amount of the insurance adjustment, ultimately set at $21,607.40.
After Lindner had hired subcontractors to undertake the repair, Frewil directed that all work stop and locked the workers out. Lindner then sued for breach of contract and Frewil asserted a counter breach as an affirmative defense and counterclaim. Although not specifically mentioned in the pleadings, it appears that Lindner had not been licensed as a “ Home Improvement Business ” by the New York City Consumer Affairs Bureau, and, in moving to dismiss the complaint for failure to allege proper licensing, defendant seeks in effect to invalidate the contract on that ground. In response, Lindner has cross-moved to amend, its complaint by adding causes of action for out-of-pocket expenses and quantum meruit.
B. CITY LICENSE REQUIREMENT.
The court must determine if Lindner operates a “ Home Improvement Business ” as defined by the city code, and if so, whether the failure to do so invalidates the contract with Frewil.
Subdivision (a) of section B32-352.0 of the Administrative Code of the City of New York provides: “No perspn shall *1043 solicit, canvass, sell, perform or obtain a home improvement contract as a contractor or salesman from an owner without a license therefor.”
Violation of this provision is classified a misdemeanor subject to penalties of up to six months’ imprisonment and $1,000 in fines for each offense. (Administrative Code, § B32-365.0.)
A “ home improvement ” is defined to mean: “ the construction, repair, replacement, remodeling, alteration, conversion, rehabilitation [and] renovation * * * [of any] building, or that portion thereof which is used or designated to be used as a residence or dwelling place * * * not includ[ing] (i) the construction of a new home building * * * or (ii) the sale of goods or materials by a seller who neither arranges to perform nor performs directly or indirectly any work or labor in connection with the installation ”, (Administrative Code, B32-351.0, subd. 2.)
C. APPLICATION OP CODE TO LINDNER.
There is little question but that, as evidenced even in its contract with Frewil, Lindner “ arrange [d] to perform ” “ repair ” or “renovation” work on a dwelling place, necessarily not entailing the construction of a “ new home ”. Its activities fall squarely within those defined under the code as a “home improvement business ”. Further, under subdivision (a) of section B32-352.0 of the code, Lindner’s particular role in the transaction qualifies as both a “ contractor ”, defined elsewhere in the code to mean ‘ any person or salesman * * * who owns, operates, maintains, conducts, controls, or transacts a home improvement business and who undertakes or offers to undertake or agrees to perform any home improvement or solicits any contract therefor ”, and a “ salesman ” meaning “any individual who negotiates * * * a home improvement contract from an owner”. (Administrative Code, § B32-351.0, subds. [5], [10].) Accordingly, by virtue of Lindner’s particular enterprise, it is subject to city licensing requirements, more specifically, to the prohibition on transacting business without a license.
The New York City Council has declared that the legislative purpose of licensing home improvement businesses is “to safeguard and protect the home owner against abuses and fraudulent practices ”. (Administrative Code, § B32-350.0.) Lindner claims the regulation does not apply to it because its business is not the typical door-to-door, high pressure home improvement operation which licensing was meant to control. Yet, while the “ fraudulent practices ’’mentioned usually conjure up the standard image of a eon man selling shoddy aluminum siding or defee *1044 tive kitchen cabinets to an uninformed homeowner, nothing in the regulations so limits their application. Likewise, nothing in the code or its declared purposes distinguishes between a corporate and individual homeowner. And, there is no apparent reason why the particular activity involved here, appraising and arranging for repairs of fire damage, should be or is immune from opportunities for abuse and fraud.
D. UNENFORCEABILITY OF THE CONTRACT.
Yet, having determined that Lindner is subject to license requirements, how does its not being licensed affect the contract with Frewil? While illegal contracts are generally unenforceable, the lack of a required license is more refined in its legal effect. Two possibilities emerge from the authorities. First, if the regulation is so emphatic in its endeavor to protect the public, as in cases “ involving health or morals ”, or to protect the public “health and safety ”, that a contract by an unlicensed vendor would offend legislative intent, the agreement is invalid and may, in effect, be declared rescinded. (Richards Conditioning Corp. v. Oleet, 21 N Y 2d 895, 896; Adler v. Zimmerman, 233 N. Y. 431, 438; Johnston v. Dahlgren, 166 N. Y. 354, 358; Carmine v. Murphy, 285 N. Y. 413, 416.)
On the other hand, where public protection is not so purposefully paramount, or is but remotely involved in the particular type of contract activity presented, the courts have enforced the agreement notwithstanding the violation of a licensing regulation. (Rosasco Creameries v. Cohen, 276 N. Y. 274, 278-280; General Venture Capital Corp. v. Wilder Transp., 26 A D 2d 173, 178.) “ Legislative intent remains the touchstone ’ ’ in determining the contractual effect of a party’s failure to be licensed as required by law. (Atkin v. Hill, Darlington & Grimm, 15 A D 2d 362, 367.)
With the assault of varied and intensive “ come-on ” schemes upon the consuming public, it may be fairly said that a regulation to protect the public from fraudulent home improvement sales practices protects the economic “ health ” of the community. The statement of legislative purpose so indicates.
The home repair plans here are of a kind which entail a mixed fiduciary function of negotiating the claim of a property owner victimized by fire against the insurance carrier, yet, with an awareness that the quality and extent of repairs depends upon the amount recovered. This circumstance presents proposed obligations of considerable complexity to the solicited homeowner. And the homeowner recently victimized by a fire is cer *1045 tainly in a most vulnerable circumstance, which perhaps more than the normal case warrants regulatory protection. (See Unger v. Travel Arrangements, 25 A D 2d 40, 44.) Despite the criminal sanctions available to curb such unlicensed contractors, the civil remedy of rescission should be available to nullify any circumvention, however inadvertent, of the license requirement.
Accordingly, although the regulation does not .specifically invalidate a home improvement contract executed by an unlicensed contractor, because the commercial venture is the kind of activity meant to be supervised governmentally for public protection, the absence of a license is fatal to the continued validity of the contract.
E. QUANTUM MERUIT REMAINS.
Yet, particularly as the declared invalidity effects a rescission of the agreement, ¡and there is no apparent bad faith or unconscionable use of any bargaining advantage between the two contracting corporations, equitable considerations remain.
Frewil in no way claims that the insurance settlement obtained was fraudulent or even inadequate, nor that the repairs performed were substandard or unsatisfactory. Its basic dissatisfaction with the contract appears to have been with the price. ' Further, Lindner has not secluded itself from administrative scrutiny, but has tried to obtain a license, albeit without any determination to date.
Under these circumstances, employing classic principles used in rescission cases, the value of actual services rendered and materials supplied, absent corporate profit to Lindner, are validly recoverable. (See Unger v. Travel Arrangements, 25 A D 2d 40, 45, supra; Lewis v. Gover, 28 A D 2d 525.) Such payment for a fixed and nonreturnable value actually received by Frewil is appropriate. However, the recovery may not in any way exceed the contract price, lest a premium result from failure to comply with the licensing law.
In the absence of factors indicating unconscionable intent or actual danger to public safety, a quantum meruit award does not offend the intent of the New York City licensing provisions.
Accordingly, the cross motion to amend the complaint by adding the second and third causes of action claiming payment for labor, services and materials actually expended on a quantum meruit- basis, less any built-in corporate profit, the total in no event to exceed the contract price, is granted. Defendant’s motion to dismiss the first cause of action based Upon breach of contract is granted,