OPINION OF THE COURT
Myriam J. Altman, J.
Petitioner seeks to confirm the arbitration award rendered July 2, 1979. Respondent cross-moves to vacate the arbitration award.
Petitioner has been engaged in the business of painting, decorating, and general home contracting since 1911. On May 24, 1978, petitioner and respondent entered into a written contract under which petitioner agreed to perform services and provide materials in the reconstruction and renovation of respondent’s co-operative apartment. Petitioner worked at the apartment until November 16, 1978. At that time, respondent refused to allow petitioner to continue, on the ground that the work being performed was of inferior and shoddy quality.
Petitioner claimed that an amount in excess of $70,000 was *6 owed by respondent under the May 24, 1978 contract. Pursuant to Paragraph No. 7.9.1 of the contract, this claim was submitted to arbitration. Following several hearings in March and April, 1979, the arbitrator rendered his award on July 2, 1979. The award required the performance of certain services by petitioner and cash payments by respondent. Since July 2, 1979, respondent has refused to comply with the terms of the award.
Petitioner now seeks to confirm the arbitrator’s award. Respondent cross-moves to vacate the award on the grounds that (1) the award violates public policy because petitioner was not licensed to conduct a home improvement business, and (2) the rights of the respondent were prejudiced by the partiality of the arbitrator.
Subdivision (a) of section B32-352.0 of the Administrative Code of the City of New York provides that "[n]o person shall solicit, canvass, sell, perform or obtain a home improvement contract as a contractor or salesman from an owner without a license therefor.” It is undisputed that petitioner was not licensed in accordance with the Administrative Code at the time of the execution of the contract or performance thereunder. Petitioner subsequently obtained such a license on October 29, 1979.
Petitioner argues, inter alla, that the agreement between the parties is not governed by provisions of the Administrative Code because respondent is a shareholder of the corporation which owns the multi-unit, co-operative apartment building in which respondent resides and, as such, she is not among those persons protected by article 42 (§ B32-350.0 et seq.). No claim is made that the contract is not for home improvement.
The Administrative Code provides the following definitions (§ B32-351.0):
"3. 'Building’ means any structure containing no more than four residence or dwelling units.
"4. 'Owner’ means any homeowner, condominium unit owner, tenant, or any other person who orders contracts for or purchases the home improvement services of a contractor or the person entitled to the performance of the work of a contractor pursuant to a home improvement contract * * *
"6. 'Home improvement contract’ means an agreement, whether, oral or written, or contained in one or more documents, between a contractor, and an owner; or contractor and *7 a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, provided said work is to be performed in, to or upon the residence or dwelling unit of such tenant, for the performance of a home improvement and includes all labor, services and materials to be furnished and performed thereunder.”
The words "home improvement” relate to work performed on "any land or building” (Administrative Code, § B32-351.0, subd 2). As defined in subdivision 3 of section B32-351.0, a building is any structure containing no more than four dwelling units. The only exception to the limit of four such units is in the case of a tenant (Administrative Code, § B32-351.0, subd 6). Respondent’s co-operative building is composed of more than four residential units.
No specific reference is made to co-operative owners in the Administrative Code. However, that is not an oversight, because a co-operative owner residing in such an apartment is a tenant and therefore protected by the Administrative Code.
The proprietary interest of a co-operative owner is a hybrid. It consists of shares of stock in a co-operative corporation and a proprietary lease (see Matter of State Tax Comm. v Shor, 43 NY2d 151, 154). The proprietary lease is an interest in real property for the purpose of the Statute of Frauds (see, e.g., Pollard v Meyer, 61 AD2d 766; Sebel v Williams, 88 Misc 2d 411). Nevertheless, the proprietary lessee is subject to all the rights and duties set forth in the proprietary lease (see Adams Hotel Owners v Wolf, 64 Misc 2d 614) and the by-laws of the co-operative corporation (Cooperative Corporations Law, §42). Co-operative owners can be evicted by the corporation for failure to meet these obligations (see Chinatown Apartments v Chu Cho Lam, NYLJ, March 29, 1979, p 7, col 1; Adams Hotel Owners v Wolf, supra; Forest Park Co-op. v Burg, NYLJ, Jan. 16 1980, p 14, col 3; but see Jimerson Housing Co. v Butler, 97 Misc 2d 563). Condominium owners, on the other hand, correctly constitute a separate class in the Administrative Code, because they own their dwelling units outright. Thus, for the purposes of this motion, inasmuch as a co-operative owner is a tenant, the section defining building is inapplicable (Administrative Code, § B32-351.0, subd 6).
The principal issue on this motion is whether plaintiff’s unlicensed status at the time of the making of the contract renders the contract unenforceable. Violation of a licensing statute designed as a revenue measure does not affect the *8 validity of a contract while a contract in violation of a statute designed to protect the public against fraud is unenforceable (Unger v Travel Arrangements, 25 AD2d 40; East Coast Moving & Stor. v Flappin, 78 Misc 2d 140).
Section B32-350.0 of the Administrative Code declares that: "[i]t is the purpose of the city council in enacting this article to safeguard and protect the home owner against abuses and fraudulent practices by licensing persons engaged in the home improvement, remodeling and repair business.” Accordingly, the May 24, 1978 home improvement contract between respondent and petitioner, an unlicensed contractor, is void as a matter of law (George Piersa, Inc. v Rosenthal, 72 AD2d 593; Segrete v Zimmerman, 67 AD2d 999; Buffoleno v Denning, 82 Misc 2d 472; Vegliack v Mazzella, 73 Misc 2d 90).
A contract which is void and unenforceable is not enforceable in arbitration (Hirsch v Hirsch, 37 NY2d 312; Matter ofExercycle Corp. [Maratta], 9 NY2d 329). A challenge to arbitration under such a contract on public policy grounds may be made, as here, for the first time on a motion to vacate the arbitrator’s award (Hirsch v Hirsch, supra, at p 315; Durst v Abrash, 22 AD2d 39, affd 17 NY2d 445). The arbitrator in the instant case did not have the power to enforce the terms of the void contract between the parties. Accordingly, the arbitrator’s award must be vacated pursuant to CPLR 7511 (subd [b], par 1, cl [iii]).
Petitioner contends that, under the unique circumstances of this case, it should alternatively be entitled to recover on a quantum meruit basis (see Atkin v Hill, Darlington & Grimm, 15 AD2d 362, affd 12 NY2d 940; Gargano v Smith, 97 Misc 2d 535; Lindner Appraisal Corp. v H. Mabel Frewil Corp., 72 Misc 2d 1041, but see George Piersa, Inc. v Rosenthal, 72 AD2d 593, supra; Segrete v Zimmerman, 67 AD2d 999, supra). However, that issue is not before me on this proceeding to confirm the arbitrator’s award. There is nothing to remand to an arbitrator because the arbitration clause is part of a void contract. Whatever right petitioner may have to recover on a quantum meruit basis can only be determined in a plenary action.
For the reasons stated above, petitioner’s motion to confirm the arbitration award of July 2, 1979 is denied. Respondent’s cross motion to vacate the award is granted.