OTTO METZ, Appellant, Respondent, *v.* WOODWARD-BROWN
REALTY COMPANY, Respondent, Appellant.

Second Department, March 1, 1918.

**Contract against public policy — agreement to influence public
officers to perform public duty — complaint based thereon
dismissed.**

Services rendered private property owners for their private advantage in
influencing public officers to perform a public duty, which must not be
affected in any way by such private individual designs, cannot be made
the basis of a recovery.

A complaint in an action to recover for services alleged to have been per-
formed by the plaintiff in arousing the people and taxpayers, not for
the public good, but to enable the defendant to dispose of its real estate
and the plaintiff to earn a commission on the amount which a city might
be obliged to pay, should be dismissed upon the ground that the plain-
tiff's alleged contract is contrary to public policy.

If any part of the consideration for a contract is contrary to public policy,
the whole contract fails.

In such cases the court of its own motion will interfere and deny relief to
one seeking to benefit thereby.

APPEAL by the plaintiff, Otto Metz, from an order of the
Supreme Court, made at the Queens County Trial Term and
entered in the office of the clerk of the county of Queens on
the 23d day of May, 1917, granting defendant's motion to
set aside a verdict in plaintiff's favor for $10,850 and granting
a new trial.

Appeal by the defendant from so much of said order as
denies its motion to dismiss the complaint made at the close
of the trial.

*John Hetherington,* for the plaintiff.

*Timothy A. McCarthy* [*George J. Gillespie* with him on the
brief], for the defendant.

KELLY, J.:

We have no difficulty in affirming the order of the learned
trial justice, which set aside the verdict for the plaintiff;
the granting or refusing of a new trial on the minutes was

largely a matter resting in his discretion. (*Barrett* v. *Third Ave. R. R. Co.,* 45 N. Y. 628; *Lund* v. *Spencer,* 42 App. Div. 543; *Lawrence* v. *Wilson,* 86 id. 472.) The plaintiff was the only witness called to substantiate his claim, he was sharply contradicted and we cannot find in the record any evidence that he was the procuring cause for the establishment or location of the public park in Astoria. During the entire period of the services for which he seeks compensation in this action, the plaintiff was employed by the defendant at a salary of twenty-five dollars per week, which was regularly paid to him and which would appear to be commensurate with the character of his work.

But we think the trial justice should have granted defendant's motion to dismiss the complaint. The city of New York did not purchase or agree to purchase the defendant's property. The question whether a public park should be established or located in a particular locality was a matter committed by the Legislature to the board of aldermen of the city of New York subject to the control of the board of estimate and apportionment (Greater N. Y. Charter [Laws of 1901, chap. 466], § 47, as amd. by Laws of 1908, chap. 376*), and the city officials in performing this important public duty could not be moved by the solicitation of property owners actuated by the desire to sell their land. Any such reason or motive would be opposed to the public reason or motive which alone should govern the officials, and services which are said to have been rendered private property owners for their private advantage in influencing public officers to perform a public duty, which must not be affected in any way by such private, individual designs, cannot be made the basis of recovery in the courts of this State. " It must be the right of every citizen who is interested in any proposed legislation to employ an agent for compensation payable to him, to draft his bill and explain it to any committee or to any member of a committee, or of the Legislature, fairly and openly, and ask to have it introduced; and contracts which do not provide for more, and services which do not go farther, in our judgment violate no principle of law or

---

* Since amd. by Laws of 1916, chap. 615.— [REP.

rule of public policy" (*Chesebrough* v. *Conover*, 140 N. Y. 382, 387), but this doctrine cannot be cited to sustain the plaintiff's claim. If the public authorities of the city had determined to establish a park and the location of the park, certainly there would be nothing illegal in the property owner employing an agent to effect a sale for the public use. But when the basis of the plaintiff's claim is that for the private interests of his employer, to enable the defendant to unload its land on the city, he "aroused the people" and "stirred up the taxpayers," to influence the board of estimate, we think the services come under the condemnation of the law. The service was not fair and open, so far as the plaintiff was concerned the people were aroused and the taxpayers were stirred up, not for the public good, but to enable the defendant to dispose of its real estate and the plaintiff to earn a commission on the amount which the city might be obliged to pay to private individuals in consequence of the upheaval. Thus when the plaintiff says he stirred up the taxpayers in Astoria and told them ". it was very necessary if they ever wanted a park to pack that meeting" (the board of estimate) "to show that they want something," and when, as he says, he canvassed the borough of Manhattan from the Harlem bridge down to Thirty-third street, and saw "different organizations, particularly the clergy, pretty near every parishioner — clergyman on that east side. Then I seen the organizations and I seen labor societies," including similar crusades to other localities in Queens county and even as far away as Brooklyn, he was really deceiving the people. He says he personally saw 10,000 or 15,000 individuals including taxpayers' societies, the Protective Musical Union, the Central Labor Union, the Bricklayers' Union, and all the clergy between One Hundred and Twenty-fifth street and the East river down to Thirty-third street. He certainly covered a wide field, if he was to be believed, but through it all he was not working for the public good, but secretly for his private employer and for himself. While there is nothing in the record to show any connection between his energies and the action of the board of estimate in establishing and locating a public park in Astoria, we feel sure that if he had explained his real motives to the varied populations he says he addressed, they might well have

resented his interference.  There is not a line of testimony to show that he ever stood up openly before the board of estimate to advocate the public benefit of a park in Astoria, or at this particular part of Astoria.  He says he attended the meetings of the board, but it is evident that he discreetly remained in the background while the citizens and taxpayers cried out for the park.  Can it be doubted that if the board of estimate, and the citizens and taxpayers who packed the meeting at plaintiff's solicitation, knew that this gentleman who claims to have engineered the entire proceeding, was actuated entirely by the desire to unload a parcel of land on the city for $725,000, on which he was to receive a commission of two per cent, the whole project, or the whole " scheme " as the plaintiff more properly describes it, would have assumed a different aspect?  The plaintiff was not fair to the members of the board of estimate or to the public.

As long ago as 1853 the Supreme Court of the United States said: " Public policy and sound morality do, therefore, imperatively require that courts should put the stamp of their disapprobation on every act, and pronounce void every contract the ultimate or probable tendency of which would be to sully the purity or mislead the judgments of those to whom the high trust of legislation is confided.  All persons whose interests may in any way be affected by any public or private act of the Legislature, have an undoubted right to urge their claims and arguments, either in person or by counsel professing to act for them, before legislative committees, as well as in courts of justice.  But where persons act as counsel or agents, or in any representative capacity, it is due to those before whom they plead or solicit, that they should honestly appear in their true characters, so that their arguments and representations, openly and candidly made, may receive their just weight and consideration.  A hired advocate or agent, assuming to act in a different character, is practicing deceit on the Legislature.  Advice or information flowing from the unbiased judgment of disinterested persons, will naturally be received with more confidence and less scrupulously examined than where the recommendations are known to be the result of pecuniary interest, or the arguments prompted and pressed by hope of a large

contingent reward, and the agent ' stimulated to active partisanship by the strong lure of high profit.'   Any attempts to deceive persons intrusted with the high functions of legislation, by secret combinations, or to create or bring into operation undue influences of any kind, have all the injurious effects of a direct fraud on the public.   Legislators should act with a single eye to the true interest of the whole people, and courts of justice can give no countenance to the use of means which may subject them to be misled by the pertinacious importunity and indirect influences of interested and unscrupulous agents or solicitors." (*Marshall* v. *B. & O. R. R. Co.*, 57 U. S. [16 How.] 314.)   In *Trist* v. *Child* (88 U. S. [21 Wall.] 441, 450), Mr. Justice SWAYNE, writing of the importance of proper conception by those in public station of their relation of trust to the public, says: " But there is a correlative duty resting upon the citizen.   In his intercourse with those in authority, whether executive or legislative, touching the performance of their functions, he is bound to exhibit truth, frankness, and integrity. Any departure from the line of rectitude in such cases, is not only bad in morals, but involves a public wrong.   No people can have any higher public interest, except the preservation of their liberties, than integrity in the administration of their government in all its departments."   There is a marked distinction between the service of an avowed agent openly performed in dealing with governmental agencies, and the forbidden case of interference with legislative action by a party who does not profess to act on commercial principles. (*Lyon* v. *Mitchell*, 36 N. Y. 235.)   " It is not necessary to adjudge that the parties stipulated for corrupt action, or that they intended that secret and improper resorts should be had.   It is enough that the contract tends directly to those results.   It furnishes a temptation to the plaintiff, to resort to corrupt means or improper devices, to influence legislative action.   It tends to subject the Legislature to influences destructive of its character, and fatal to public confidence in its action." (*Mills* v. *Mills*, 40 N. Y. 543, citing *Clippinger* v. *Hepbaugh*, 5 W. & S. 315; *Fuller* v. *Dame*, 18 Pick. 472, 479.)   On the plaintiff's own showing, the services which he says he performed related to the establishment and location of a public park, a matter of public interest, in respect

of which the private advantages to either plaintiff or defendant could not be considered. If any part .of the consideration for his contract was contrary to public policy, the whole promise fails. (*Hazelton* v. *Sheckells*, 202 U. S. 71.)

The court cannot avoid consideration of the plain violation of these salutary principles, disclosed by the plaintiff's testimony. In such cases courts of their own motion will interfere and deny relief to one seeking to benefit by such transactions (*Dunham* v. *Hastings Pavement Co.*, 57 App. Div. 426), and, therefore, while the learned trial justice was right in setting aside the verdict for the plaintiff as contrary to law and contrary to the evidence, it should have gone further and dismissed the complaint upon the ground that the plaintiff's alleged contract was contrary to public policy.

The order setting aside the verdict for plaintiff and directing a new trial of the action is reversed, without costs, and complaint dismissed upon the merits, with costs.

JENKS, P. J., MILLS, RICH and BLACKMAR, JJ., concurred.

Order setting aside verdict and granting new trial reversed, without costs, and complaint dismissed upon the merits, with costs.