AMERICAN STORE EQUIPMENT & CONSTRUCTION CORPORATION, Plaintiff, *v.* JACK DEMPSEY'S PUNCH BOWL, INC., and Others, Defendants.*

Supreme Court, Special Term, New York County, May 2, 1939.

*Philip Feldman,* for the plaintiff.

*Edward Amron,* for the defendants.

ROSENMAN, J. The principles and precedents with respect to the effect of statutory licensing provisions upon actions for compensation for services rendered by unlicensed plaintiffs have been discussed by me in *Shorten* v. *Milbank* (170 Misc. 905; affd., 256 App. Div. 1069). The question to be determined is whether an agreement by one who is not licensed but who should be licensed according to statute, is merely *malum prohibitum* so that a recovery thereon may be permitted; or whether it is of such illegality that public policy will actually ban any recovery thereon even though the unlicensed party has performed the services undertaken.

It is conceded that plaintiff here has no license as an architect. It could not, in fact, be licensed. (Education Law, § 1476, subd. 2.) The provisions of the Education Law relative to licensing of architects were promulgated " to safeguard life, health and property." (Education Law, § 1476, subd. 1.) In principle, too, " any professional service such as consultation * * * planning, design, including æsthetic and structural design, or responsible supervision of construction, in connection with any private or public buildings, * * * or the equipment or utilities thereof, or the accessories thereto " (Education Law, § 1475, subd. 6) necessarily involves, at least to some extent, the safeguarding of life, health

or property. Such was a substantial portion of the services required by the contracts to be performed by the plaintiff. Though there were other services to be rendered, such as designing, arranging and decorating, there were also the preparation of plans and the supervision of construction work which are the usual functions of an architect.

Subdivision 1 of section 1476 and subdivision 6 of section 1475 of the Education Law are almost identical respectively with the first portion of section 1450 and subdivision 6 of section 1449 thereof. It has already been held judicially (*Dinan Co., Inc.*, v. *Slater*, 132 Misc. 454; affd., 225 App. Div. 750) that compliance with section 1450 was a necessary requisite to a recovery for engineering services. (That case was decided upon the statute as enacted in 1927; but there has been little change in the section as it reads today.) The same principles are applicable to architectural services; for both professions involve the safety and lives of the general public who use their structures. Consequently, plaintiff here cannot recover for it cannot show compliance with the architectural licensing statutes.

The plaintiff contends, however, that even if it did perform certain architectural services, nevertheless it can recover for all those portions of the contract not involving such services; and that the architectural services, if any, amount only to about five per cent or ten per cent of all the services undertaken to be rendered. However, there is no means of segregating the good from the bad portions of the contract, in this case. The contract was entire and indivisible; to plan, construct and furnish a complete unit. If the plaintiff had sold the interior furnishings and decorations, the contract could have been separated at least to the extent of permitting recovery for the merchandise sold. Here, however, were only services, ideas and supervision. They cannot be separated into different classes — legal and illegal.

The general rule still persists that " If any part of the consideration for his contract was contrary to public policy, the whole promise fails." (*Metz* v. *Woodward-Brown Realty Co.*, 182 App. Div. 60, 65.) Where, as here, the " defendant's promise arose out of and is indissolubly linked with plaintiff's illegal bargain " (*Sturm* v. *Truby*, 245 App. Div. 357, 360), there can be no separation of acts to support proportional recovery.

To sustain the legality of the balance of the agreements would lead to widespread disregard of the licensing statutes. It would be easy for any construction contractor to thwart the purposes for which the licensing of architects was enacted, by merely providing in his contract that architectural services would be given gratis, so long as the contractor were awarded the contract itself.

Another contention of the plaintiff is that it is not generally engaged in the practice of architecture. Subdivision 6 of section 1475 of the Education Law, however, provides that " A person practices architecture within the meaning and intent of this article, who * * * does perform any professional service such as * * * " are called for by these agreements. One instance of rendering such services is sufficient to bring a person within the category of practicing architecture. It is not necessary, under this provision, that a person make a regular business of performing similar services before he is obligated to comply with the licensing sections.

Judgment for defendants. Thirty days' stay and sixty days to make a case.