Stbeit, J.
(dissenting). In every case where an unlicensed professional violates the law by practicing without a State license — with or without the knowledge of the client — there exists a sympathetic claim of unjust enrichment. In the enforcement of this licensing statute, it would appear necessary to ignore the plight of the statute violator, even where the beneficiary of his services had knowledge of, and acquiesced in the statutory violation, or else we render our licensing laws meaningless.
*316 In the past, we had statutes which did not expressly proscribe the practice of architecture without a State certificate or license, but merely proscribed using the title of, and representing oneself as a “ registered architect,” when in fact one was not so certified. (See General Business Law of 1909, § 77, added by L. 1915, ch. 454, amd. by L. 1917, ch. 358, renum. 77-a by L. 1922, ch. 461, repealed by L. 1927, ch. 85; Education Law, § 1476, added by L. 1927, ch. 85, repealed by L. 1929, ch. 572.) Quite properly, this court then held that such statutory provision was ‘ ‘ clearly regulative in respect to the title that may be assumed and does not forbid the practice of the profession or occupation generally.” (Roth v. Hosier Realty Co., 119 Misc. 686 [App. Term, 1st Dept., 1922]; see, also, Bintz v. Mid-City Park Corp., 223 App. Div. 533 [3d Dept., 1928]).
In 1929, the Legislature rewrote this statute (L. 1929, ch. 572) to provide, in unequivocal language, that: “ In order to safeguard life, health and property, no person shall * * * practice architecture, in this state, or use the title architect * * * unless such person shall have secured from the regents a certificate as1 registered architect, in the manner hereinafter provided, and shall thereafter comply with the provisions of this article.” (italics added).
This express prohibition of practicing architecture has been carried forward in each subsequent revision of the statute (see Education Law, former § 7302, eff. July 1, 1948; new § 7302, eff. Sept. 1, 1971). It has been construed to mean exactly what it says, so that recovery has been denied those doing architectural work without complying with the statute, even where the recipient of the services is presumed to be aware of the noncompliance (see, American Store Equip. & Constr. Corp. v. Jack Dempsey’s Punch Bowl, 174 Misc. 436, affd. 258 App. Div. 794, mot. for lv. to app. den. 258 App. Div. 876). Since the purpose of the licensing statute is the safeguarding of the life, health and property of our citizens, the fact, alluded to by the majority, that a corporation was technically incapable of being licensed, seems irrelevant. It is not the technical legal capacity for licensing that is significant, but the fact of licensing, demonstrating proof of professional competence and responsibility.
The contention that there exist widespread violations of the spirit and letter of this statute in the building industry, even if established, certainly should form no basis for recovery herein. Consequently, if the existence of this illegal custom be a fact question raised herein, it is an irrelevant one.
*317 Plaintiff makes the ostensibly compelling argument that this statute should not be so literally construed as to prevent a world-famous architect from coming into New York to design some particular project. Presuming to put himself in this category, he argues that the purpose of the statute is served if such an architect employs the services of a local registered architect or engineer to put the final stamp of approval on plans, specifications, etc., which have to be filed with governmental authorities. What plaintiff chooses to ignore is the presence of a statutory provision covering this specific situation. By making application to the Board of Regents, establishing his out-of-State qualifications and paying a minimal fee, such an architect may secure a limited or temporary permit in connection with a specific project (see Education Law, § 7305, and former §§ 7302, subd. 2, par. [b], 7304). There exists no need or justification for the statutory avoidance practiced herein. Moreover, from the evidence presented it appears that this was not a one-shot deal as far as plaintiff was concerned, but rather, that he maintains an office in New York City, in conjunction with a registered engineer, for the regular conduct of architectural services and holds himself out as a “ Registered Architect. ’ ’ If this statute is to have any effect, such persons must be discouraged from carrying on their ‘ ‘ custom ’ ’ and this requires, inter alia, denial of recovery for services performed, even if an undeserved windfall to crafty clients should result.
The statute here sought to be enforced does not exist in isolation. The legal precedent here set may well apply to the unlicensed practice of medicine (Education Law, § 6522), physical therapy (Education Law, § 6532), chiropractics (Education Law, § 6552), dentistry (Education Law, § 6602), veterinary medicine (Education Law, § 6702), pharmacy (Education Law, § 6803), nursing (Education Law, § 6902), podiatry (Education Law, § 7002), optometry (Education Law, § 7102), engineering (Education Law, § 7202), land surveying (Education Law, § 7204), certified public accountancy (Education Law, § 7402), to say nothing of the practice of law itself.
I am of the opinion that we are called upon to deny recovery for the sake of a public policy which far transcends the individual equities herein.
I vote to reverse the order on appeal and dismiss the complaint herein.
Concur — Markowitz, J. P., and Gold, J.; Streit, J., dissents in memorandum.
Order affirmed, with $10 costs.