CLAUDE CHARLEBOIS et al., Appellants, v J. M. WELLER ASSOCIATES, INC., Respondent.

Third Department, March 31, 1988

**APPEARANCES OF COUNSEL**

*Couch & Howard, P. C. (Leslie F. Couch* of counsel), for appellants.

*LaPann, Reardon, Morris, Fitzgerald & Firth, P. C. (Peter A. Firth* of counsel), for respondent.

*Bernstein, Weiss, Coplan, Weinstein & Lake (Norman A. Coplan* of counsel), for New York State Association of Architects, Inc., *amicus curiae.*

*Bryant, O'Dell & Basso* for General Building Contractors of New York, Inc., *amicus curiae.*

## OPINION OF THE COURT

CASEY, J.

At issue on this appeal is whether a construction contract between the owner and the contractor, whereby the contractor agrees not only to perform the construction of the project but also to be responsible for furnishing the design, is void as against public policy since the contractor is neither a licensed architect nor a licensed engineer. On the facts of this case, Supreme Court correctly declared that the contract is valid and enforceable.

In January 1986 the parties entered into an agreement, called a "design-build" contract, for the construction by defendant of an addition to an existing building and the construction of a new warehouse to be used by plaintiffs in their beer distribution business. A dispute arose during the performance of the contract, with plaintiffs refusing to make further payments until certain alleged design and construction defects were corrected. Defendant demanded arbitration pursuant to the terms of the contract and plaintiffs thereafter instituted this action, seeking a declaratory judgment declaring the parties' contract void as against public policy.

The contract defines the "Construction Team" as the "Contractor" (defendant), the "Owner" (plaintiffs), and the "Architect/Engineer", and it provides that "the 'Construction Team' shall work from the beginning of design through construction completion". The contract contains the following provision: "The services of [left blank], as the Architect/Engineer, will be furnished by the Contractor pursuant to an agreement between the Contractor and the Architect/Engineer." Another clause in the contract provides that "all Architectural & Structural Engineering services are provided by James M. Weller, P.E. and are included in the 'Contractor's Fee' ". Under the heading "Contractor's Services", the contract provides that "[t]he Contractor shall be responsible for furnishing

the Design and for the construction of the Project", and in the opening article of the agreement, the "Contractor" "agrees to furnish the architectural, engineering and construction services set forth herein". Based upon these latter provisions, plaintiffs claim that the contract is void as against public policy since only a person licensed under the Education Law shall practice engineering or architecture (Education Law §§ 7202, 7302).

Since the contract clearly and unambiguously requires that all architectural and engineering services be provided by a named licensed professional engineer, plaintiffs' claim must be rejected. Specifically, the contract provides that "schematic Design Studies", "Design Development Documents" and "Drawings and Specifications setting forth in detail the requirements for the construction of the Project" shall be prepared by the "Architect/Engineer". Under no reasonable interpretation of its language as a whole can the contract be construed as requiring or authorizing defendant to engage in the practice of engineering or architecture.* The case of *American Store Equip. & Constr. Corp. v Dempsey's Punch Bowl* (174 Misc 436, *affd* 258 App Div 794, *affd* 283 NY 601), relied upon by plaintiffs, is distinguishable, for in that case a general contractor agreed to perform architectural services in connection with the construction of a building and since the contractor was not a licensed architect, the contract was held to be void *(cf., Turner Constr. Co. v 1600 E. Ave.,* 30 Misc 2d 811, *affd* 15 AD2d 631). Defendant herein did not agree to perform architectural or engineering services; rather, plaintiffs and defendant agreed that a licensed third party would perform those services.

Plaintiffs point out that where an unlicensed person agrees to perform services for which a license is required, the illegality is not cured merely because the unlicensed person hires a licensed person to do the work *(see, e.g., Vitanza v City of New York,* 48 AD2d 41, *affd* 40 NY2d 872). In contrast, the Court of Appeals explained in *Bronold v Engler* (194 NY 323, 325): "A builder might contract to erect and complete a house or other structure including the plumbing work for a gross sum and for that purpose he would have the right to employ a licensed master plumber to do the plumbing work. He would in such

---

* It should be noted that certain activities undertaken by defendant as "Contractor", such as construction supervision and management, are specifically exempt from the licensing requirements (Education Law § 7208 [h], [p]; § 7306 [c], [g]).

case in no fair sense be conducting the 'trade, business or calling' of a master plumber. It would be the mere incident of a larger work." *(See, Vereinigte Osterreichische Eisen und Stahlwerke, A.G. v Modular Bldg. & Dev. Corp.,* 64 Misc 2d 1050, *mod* 37 AD2d 525.)* Here, too, in no fair sense is defendant engaging in the practice of architecture or engineering. More importantly, defendant did not merely hire or sublet to a licensed engineer. The parties agreed in the contract that a named licensed professional engineer would perform all services for which a license was required. Had this same relationship been created by direct contract between plaintiffs and the named professional engineer there could be no claim of illegality. A finding of illegality on the basis of the absence of a direct contractual relationship between plaintiffs and the licensed engineer would exalt form over substance. There can be little doubt that plaintiffs are third-party beneficiaries of the contract between defendant and the licensed professional engineer *(see, Bonwell v Stone,* 128 AD2d 1013). In addition, the duty of care owed by the engineer to plaintiffs is not defined by privity of contract *(supra,* at 1014). In the circumstances of this case, neither the letter of the law requiring the practice of architecture and engineering by licensed professionals, nor the spirit of the public policy behind that law, has been violated. Supreme Court's order declaring the contract enforceable should, therefore, be affirmed.

KANE, J. P. (dissenting). We are not persuaded by the majority's attempt to legitimize a contractual arrangement, the clear purpose of which is to circumvent specific statutory proscriptions in the practice of architecture and engineering. Moreover, this decision frustrates the long-standing public policy of the State in an area where the Legislature has, consistently, rejected efforts to sanction the consequences of that decision.

We start with the proposition that only those persons licensed or otherwise authorized under the Education Law can engage in the practice of engineering or architecture *(see,* Education Law §§ 7202, 7302). Notably, corporations, other than professional corporations (Business Corporation Law art 15) and those excepted by Education Law §§ 7207 and 7307, cannot engage in the practice of engineering or architecture *(see, Turner Constr. Co. v 1600 E. Ave.,* 30 Misc 2d 811, 812, *affd* 15 AD2d 631). The practice of engineering is defined as:

"performing professional service such as consultation, investigation, evaluation, planning, design or supervision of construction or operation in connection with any utilities, structures, buildings, machines, equipment, processes, works, or projects wherein the safeguarding of life, health and property is concerned, when such service or work requires the application of engineering principles and data" (Education Law § 7201). The practice of architecture is defined as the: "rendering or offering to render services which require the application of the art, science, and aesthetics of design and construction of buildings [and] groups of buildings * * * wherein the safeguarding of life, health, property, and public welfare is concerned. Such services include, but are not limited to consultation, evaluation, planning, the provision of preliminary studies, designs, construction documents, construction management, and the administration of construction contracts" (Education Law § 7301).

Here, defendant, a profit-motivated business corporation, was not and could not be licensed as an engineer or architect, yet it contracted to perform such services by placing a licensed professional under its direct control. Such a contract is contrary to public policy, illegal and unenforceable *(see, American Store Equip. & Constr. Corp. v Dempsey's Punch Bowl,* 174 Misc 436, 437, *affd* 258 App Div 794, *affd* 283 NY 601). The fact that Weller, defendant's president, is a validly licensed professional does not alter the fact that the underlying contract is illegal *(see, Hammerman v Jamco Indus.,* 119 AD2d 544, 545-546; *George Piersa, Inc. v Rosenthal,* 72 AD2d 593, 593-594; *see also, Food Mgt. v Blue Ribbon Beef Pack,* 413 F2d 716, 720-721; *Dalton, Dalton, Little v Mirandi,* 412 F Supp 1001, 1004-1005).

There are specific statutory provisions establishing criteria for professional services in corporate form, including those involved herein (Business Corporation Law art 15; *see,* Education Law § 7209 [4]). Clearly, there would be no reason for laws governing professional services by qualified professional service corporations if any business corporation could evade their provisions merely by employing a licensed professional. Here, the contract in question is a "design-build" contract, wherein the contractor becomes a "package dealer" which results in the creation of relationships frustrating the purpose of Education Law §§ 7201 and 7301. That overriding purpose is to provide protection for the life and safety of the general public, by requiring independent, unfettered professional de-

sign and construction services directly to an owner free of any influence or control by a third party. By the terms of this contract, Weller, the architect/engineer, is a subcontractor of defendant. He is also its president, and presumably, the alter ego of defendant. In such a relationship, sheer logic dictates the conclusion that the legal, ethical and fiduciary duties an independent professional would owe to an owner are, in these circumstances, subsumed by the profit motive inherent in the operation of any business enterprise. "James M. Weller President", is a signatory to this contract. He cannot assume a different role by becoming "James M. Weller, P.E.", architect/engineer on the same project as a subcontractor of defendant, and thus isolate himself from the consequences of this entirely integrated design-build agreement. The plain, simple inescapable fact is, that under the terms of this agreement, defendant is providing architectural and engineering services. This it cannot do.

Accordingly, because defendant is not licensed and the illegal provisions of the contract vitiate the entire agreement, the entire promise fails and there can be no recovery on the theory of either breach of contract or quantum meruit *(see, Hammerman v Jamco Indus.,* 119 AD2d 544, 545, *supra; George Piersa, Inc. v Rosenthal,* 72 AD2d 593, *supra; American Store Equip. & Constr. Corp. v Dempsey's Punch Bowl,* 174 Misc 436, 437, *supra).* Defendant may not seek the aid of the courts to enforce an illegal contract *(see, United Calendar Mfg. Corp. v Huang,* 94 AD2d 176, 180).

The order should be reversed by denying defendant's cross motion for summary judgment, and granting plaintiffs' motion for summary judgment.

WEISS and YESAWICH, JR., JJ., concur with CASEY, J.; KANE, J. P., and LEVINE, J., dissent and vote to reverse in an opinion by KANE, J. P.

Order affirmed, with costs to defendant against plaintiffs.