OPINION OF THE COURT
Lewis R. Friedman, J.
A home improvement contractor performing work within the City of New York must be licensed by the Department of Consumer Affairs (the Department) (Administrative Code of City of New York § 20-387). In 1983 the Legislature, to provide *738 additional protection for the consumer-homeowner, enacted CPLR 3015 (e) (L 1983, ch 817). The statute requires the contractor to plead its license as part of its cause of action, thus shifting the burden from the defense. In this case of first impression, the court must interpret CPLR 3015 (e) to determine whether the new section actually weakens consumer protections by permitting the enforcement of contracts by unlicensed contractors who obtain licenses during litigation.
The facts relevant to these motions are not in dispute. Plaintiffs have a Manhattan apartment and contracted for construction to be performed in the apartment by defendants. The work, although not done to plaintiffs’ satisfaction, was ultimately "completed”, after delays in both performance and payment. Plaintiffs sue for liquidated damages for delayed completion, actual damages for the cost of correcting the inadequate work, and punitive damages for defendants’ misrepresentation that they were licensed. Defendants counterclaim for the unpaid balance of the job and the cost of "extras” ordered by plaintiffs.
Plaintiffs move for summary judgment dismissing the counterclaims on the ground that defendants were not licensed as home improvement contractors when the contract was signed, when the work was completed or when the counterclaim was interposed. Defendants admit that they were not licensed and concede that a license was required by the Administrative Code for the work that was done. Defendants responded that they had applied for a license in January 1988,and sought leave to amend the counterclaims to plead the license when one was issued; a license was issued while this motion was sub judice.
A review of the substantive law is required to place the procedural issue in context. There is no doubt that the counterclaim as pleaded is legally deficient. Case law has long precluded enforcement of contracts prohibited by licensing statutes. "It is perfectly settled, that where the contract which the plaintiff seeks to enforce, be it express or implied, is expressly or by implication forbidden by the common or statute law, no court will lend its assistance to give it effect. It is equally clear that a contract is void if prohibited by a statute, though the statute inflicts a penalty only, because such a penalty implies a prohibition.” (Cope v Rowlands, 2 M & W 149, 157, 150 Eng Rep 707, 710 [Exch of Pleas 1836].)
The New York courts have permitted recovery by an unli *739 censed contractor in limited situations: the licensing statute is clearly designed only to raise revenue; the acts are malum prohibitum; there is no clear legislative intent to invalidate the contract; or there is no danger to health or morals (Rosasco Creameries v Cohen, 276 NY 274, 278-280). But, when the licensing scheme is designed to protect the public against fraud, a contract by an unlicensed person is unenforceable (Unger v Travel Arrangements, 25 AD2d 40, 43). The Court of Appeals has held that where an air-conditioning system was installed by an unlicensed person required to be licensed by the City of Yonkers, there could be no recovery on the contract "[s]ince the purpose of the regulatory scheme is to protect the public health and safety” (Richards Conditioning Corp. v Oleet, 21 NY2d 895, 896). That reasoning has been applied to preclude recovery by a contractor who is required to obtain a New York City license as a home improvement contractor and fails to do so (e.g., Mortise v 55 Liberty Owners Corp., 102 AD2d 719, 720, affd, 63 NY2d 743; Chosen Constr. Corp. v Syz, 138 AD2d 284; Zimmett v Professional Acoustics, 103 Misc 2d 971, 974-975 [App Term, 1st Dept]; Anton Sattler, Inc. v Cummings, 103 Misc 2d 4, 8). An unlicensed person is barred from recovery under the contract or in quantum meruit (Segrete v Zimmerman, 67 AD2d 999) on the theory that the consideration for the contract is contrary to public policy (Marshall-Schule Assocs. v Goldman, 137 Misc 2d 1024, 1029-1030; Metz v Woodward-Brown Realty Co., 182 App Div 60, 65). The result is the same regardless of the contractor’s partial compliance (George Piersa, Inc. v Rosenthal, 72 AD2d 593), good faith or lack of actual fraud in performance (but cf., Gargano v Smith, 97 Misc 2d 535), or whether the homeowner knowingly takes advantage of the contractor’s failure to be licensed (Millington v Rapoport, 98 AD2d 765, 766).
In an effort to compel compliance with the home improvement licensing law, Judge Thompson, then Administrative Judge of this court, directed the clerks to require contractors to plead their license. In an effort to give legislative force to that directive, the Department prepared a bill, modeled in part on Business Corporation Law § 1312, which became CPLR 3105 (e): "the complaint shall allege, as part of the cause of action, that plaintiff is duly licensed and shall contain the name and number, if any, of such license and the governmental agency which issued such license”. The section applies to cases such as the one at bar, which were commenced after July 30, 1983, and places the burden of pleading on the *740 contractor (see, Chosen Constr. Corp. v Syz, supra). Thus, the counterclaim must be dismissed for failure to state a cause of action.
The question which has not previously been addressed in the reported cases is the effect of the proviso in CPLR 3015 (e): "provided, however, that where the plaintiff does not have a license at the commencement of the action the plaintiff may, subject to the provisions of rule thirty hundred twenty-five of this article, amend the complaint with the name and number of an after-acquired license and the name of the governmental agency which issued such license or move for leave to amend the complaint in accordance with such provisions.” That language appears to allow a party to plead an after-acquired license by way of amendment. Professor Siegel finds the proviso similar to Business Corporation Law § 1312 in that it permits the plaintiff "to cure everything nunc proz tunc through an amendment” (Siegel, 1983 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3015:6, 1988 Pocket Part, at 7).
Defendants seek leave to amend the counterclaim. Leave to amend pleadings "shall be freely given” (CPLR 3025 [b]; Fahey v County of Ontario, 44 NY2d 934). The law in this Department is well settled that the court should, however, review a proposed amended pleading to determine whether, on its face, it is plainly without merit (see, Hawkins v Genesee Place Corp., 139 AD2d 433; East Asiatic Co. v Corash, 34 AD2d 432, 434; cf., Taylor v Taylor, 84 AD2d 947; Town Bd. of Town of Fallsburgh v National Sur. Corp., 53 Misc 2d 23, 24, affd 29 AD2d 726).
The court finds that a home improvement contractor must comply with two separate tests to advance a claim: (1) a valid license at the time of pleading, and (2) a valid license at the time of the contract and work. If the contractor cannot meet both tests its claim must be dismissed. Since the court finds that the Legislature did not, by enacting CPLR 3015 (e), validate an otherwise invalid contract, there is no basis for permitting defendants to plead that they are licensed; the amended counterclaims would be dismissed in any event. Judicial resources should be conserved by denying leave to amend when "the alleged insufficiency or lack of merit is clear and free from doubt” (Hawkins v Genesee Place Corp., supra, at 434).
The court must determine whether the statute, offered as a *741 consumer protection law, altered the substantive law by allowing retroactive licensing to validate contracts by unlicensed contractors. The court requested the Department, which drafted CPLR 3015 (e), to submit a brief as amicus curiae; the parties have each filed responses to that submission.
The legislative history establishes unequivocally that CPLR 3015 (e) was not designed to weaken substantive consumer rights. A review of the Bill Jacket shows that everyone promoted the statute on the ground that it provided additional protection by the affirmative pleading requirement for those licensed by the Department.* No longer would the burden be on the homeowner to determine whether the contractor was licensed. The section increased the incentives for businesses to become licensed.
None of the comments on the bill, including those of the sponsors in the Assembly and the Senate, discussed the after-acquired license proviso. It is highly significant that nothing in the legislative history suggests that the Legislature intended to overturn the well-established body of law that requires a license at the time of contracting. Indeed, Attorney-General Abrams, in supporting the new pleading requirement, brought to the Governor’s attention the case law invalidating contracts by unlicensed contractors (mem of Attorney-General to Governor, July 21, 1983, Bill Jacket, L 1983, ch 817).
"The Legislature is, however, presumed to be aware of the decisional and statute law in existence at the time of an enactment (Hammelburger v Foursome Inn Corp., 54 NY2d 580, 588; Easley v New York State Thruway Auth., 1 NY2d 374, 379), and to have abrogated the common law only to the extent that the clear import of the language used in the statute requires (Transit Commn. v Long Is. R. R. Co., 253 NY 345, 355).” (Arbegast v Board of Educ., 65 NY2d 161, 169.) The court finds that CPLR 3015 (e) does not require the abrogation of established law. Also, without doubt, CPLR 3015 (e) did not repeal by implication the licensing law. "Legislative intent is of course paramount in determining whether there has been implied repeal of a statute” (Alweis v Evans, 69 NY2d 199, 205; Matter of Consolidated Edison Co. v Department of Envtl. Conservation, 71 NY2d 186, 195). There was obviously no *742 intent to repeal the law invalidating contracts or imposing criminal sanctions for unlicensed contracting.
The sponsors’ references to Business Corporation Law § 1312 cannot be used to infer a repeal of the Administrative Code’s licensing provision. Certainly, aspects of CPLR 3015 (e) were patterned on section 1312, specifically the requirement that the licensee affirmatively plead; yet, the sections are substantively different. The Business Corporation Law section specifically provides that the failure to obtain authority "shall not impair the validity of any contract”, while the home improvement licensing law is to the contrary — the contract is, for all practical purposes, void. Thus, while section 1312 deals only with the capacity to sue on a valid contract, CPLR 3015 (e) involves a pleading requirement in connection with a contract which may have been invalid when executed. Indeed, the effect of CPLR 3015 (e) is actually similar to that of Real Property Law § 442-d, which requires a real estate broker to be licensed at the time the contract is entered into, not at the time of the action (see, Mac Queen Realty Co. v Emmi, 58 Misc 2d 54, 56).
The court has been advised that the Department’s licenses are not deemed to be effective before their issuance date, but a licensee may operate after an application is filed if a license is, in fact, issued thereafter. The court’s review of the licensing statute supports the Department’s conclusion. Nothing in the Administrative Code permits the inference that a license may be issued to validate work performed prior to the application for that license.
The law and regulations applicable to. home improvement contractors require, inter alia, background checks, bonds for faithful performance of work, submission to the Department’s hearing procedures, and substantive provisions allowing contracts to be canceled (see, e.g., Administrative Code §§ 20-385— 20-397). A license issued years after the work is undertaken affords no protection to the consumer. For example, the homeowner’s right to cancel a home improvement contract with a licensed contractor, within three days of its execution, will have lapsed long before the license was issued. The salutary, protective purposes of the statute would be undermined by allowing validation of an illegal contract upon the issuance of a license after suit.
Courts are to give effect to every portion of a statute on the assumption that the Legislature had some intent in adopting *743 it (Amonio, Brass & Copper Co. v New Lamp-Chimney Co., 53 NY 123, 125, affd 91 US 656; People v Mobil Oil Corp., 48 NY2d 192, 199; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98). The after-acquired license proviso would appear to be applicable only where the contractor was licensed at the time that the work was done, but not when the proceeding was brought. In that case, the newly issued license could reasonably permit recovery. Similar reasoning has been applied to hold that a contractor that was licensed at the time the work was done, but whose license was revoked, could sue notwithstanding CPLR 3015 (e) (Carpentry Perfectionists v Patterson, 137 Misc 2d 189). The court need not determine the parameters of the provisio at this time, but holds that it may not be used as the defendants would here, to validate a contract that was prohibited when it was signed.
The motion to dismiss the counterclaims is granted; the cross motion for leave to amend is denied.

 The section was later amended to be applicable to licenses issued by the Departments of Consumer Affairs of Nassau (L 1984, ch 243) and Suffolk (L 1985, ch 26) Counties and by Rockland County (L 1986, ch 26). There is no discussion of the proviso in the legislative history of any of those amendments.