*521 OPINION OF THE COURT
Per Curiam.
Order entered September 27, 1994 reversed, with $10 costs, motion denied and complaint reinstated.
The facts are few and simple. Plaintiff Rasmus Construction Corporation, a licensed home improvement contractor, acting through its principal, Robert Rasmus, a licensed home improvement salesperson, was hired by defendant to renovate portions of the defendant’s cooperative apartment in premises located at 40 Sutton Place, Manhattan. The contemplated renovation work was completed in or about July 1991, with no objections made by defendant as the work progressed over the quality or timeliness of the plaintiffs services. Upon the defendant’s failure to remit any portion of the amounts specified in the plaintiffs itemized billings (totaling just over $8,000), plaintiff commenced this action in November 1991 for work, labor and services rendered.
In his amended answer dated December 17, 1991, defendant stated as an "affirmative defense” that he "hereby elects to cancel its [sic] home improvement contract with plaintiff’ based upon the absence of a "written contract” as required by administrative rules governing the execution and cancellation of home improvement contracts (see, Administrative Code of City of NY § 20-391; 6 RCNY 2-221).[1] By letter of that same date (Dec. 17, 1991), roughly five months after completion of the renovation work agreed to and nearly one month after commencement of the lawsuit, defendant wrote to plaintiff echoing his intention to "cancel any home improvement contract” due to the plaintiffs failure to furnish a "written home improvement contract”.
Civil Court granted the defendant’s motion for summary judgment, finding the defendant’s postlitigation cancellation notice to be "valid and timely”. We disagree, and thus deny defendant’s motion and reinstate the complaint.
As indicated, defendant accepted the benefit of the plaintiffs full performance under the parties’ oral home improvement *522 contract and unambiguously acknowledged the existence of the agreement in his amended answer to the complaint. No claim is advanced by defendant that he was induced to contract for home improvements in reliance on any fraudulent representations or other misconduct on the plaintiffs part (cf., Administrative Code § 20-396). In the circumstances, defendant may not now rely upon any administrative writing requirement as a basis to belatedly "cancel” the completed service contract or to avoid his payment obligations thereunder, any more than defendant could now assert a general Statute of Frauds defense (see, Givens, 1996 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law § 5-701, 1996 Supp Pamph, at 41-42; see also, Swerdloff v Mobil Oil Corp., 74 AD2d 258, 261-262, Iv denied 50 NY2d 913). " Tf the statute [or ordinance] does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy * * * the right to recover will not be denied.’ ” (Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124, 127, quoting Rosasco Creameries v Cohen, 276 NY 274, 278.)
Cases such as Mortise v 55 Liberty Owners Corp. (102 AD2d 719, affd 63 NY2d 743) and Chosen Constr. Corp. v Syz (138 AD2d 284), relied upon by defendant, are inapposite, involving the situation, not here present, where a contractor or salesperson unlicensed under the Administrative Code seeks enforcement of a home improvement contract. Based upon the "public safety” concerns underlying the code licensing requirements, home improvement contracts entered into by such unlicensed entities are considered "void” (Mortise v 55 Liberty Owners Corp., supra, 102 AD2d, at 720). Inasmuch as both the plaintiff contractor in this case and its salesperson were duly licensed at all relevant times, the public safety concerns underlying Mortise and similar cases find no application here.
Nor can the administrative regulations — even if otherwise enforceable[2] — reasonably be read to preclude the plaintiff’s right of recovery. To the extent 6 RCNY 2-221 (f) purports to *523 grant a buyer the right to cancel a home improvement contract "at any time”, it was obviously intended to apply to executory contracts only. This interprétation not only harmonizes subdivision (f) with provisions elsewhere in the rules limiting a buyer’s cancellation right to a specified time period prior to commencement of the work (6 RCNY 2-221 [a] [10]; [b]; see, n 1, supra), but is consistent with the ordinary legal usage of the word "cancel” to mean " 'annul or destroy * * * revoke or recall’ ” (Matter of Otterbein v Babor & Comeau Co., 272 NY 149, 152), terms incompatible with a fully performed contractual agreement.
In permitting the plaintiffs action to go forward, we note that any violation of the agency rules that may have occurred may be redressed through appropriate administrative channels (see, Administrative Code § 20-392).

. Under rules promulgated by the Commissioner of the Department of Consumer Affairs, "Every agreement to perform a home improvement shall be evidenced by a written contract signed by all the parties to the contract” (6 RCNY 2-221 [a]), and "shall” inform the buyer of his or her right to cancel the agreement within three business days of the "transaction” (6 RCNY 2-221 [a] [10]; [b]). Pursuant to subdivision (f) of section 2-221, a buyer may exercise the right to cancel "at any time”, "[u]ntil the contractor or salesperson has complied with §§ 2-221 (a) (10) and 2-221 (b)”.

. In the absence of a contrary argument by plaintiff either below or on appeal, we assume for purposes of our decision that the regulation in issue was validly promulgated, and that it represents a rule " 'to further the implementation of the law as it exists * * * [and not] a rule out of harmony with the statute’ ” (Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480). Without reaching the issue, we do note, however, that the Administrative Code itself defines the term "Home improvement contract” as "an agreement, whether oral or written * * * be *523 tween a contractor and an owner, or contractor and a tenant”. (Administrative Code § 20-386 [6]; emphasis supplied.)