OPINION OF THE COURT
Mary Ann Brigantti-Hughes, J.
In this action, plaintiff, an automobile dealership, seeks to recover $2,500 of a $4,000 down payment from defendant, the purchaser of a secondhand car.
In a pretrial motion, defendant moves to dismiss this case in its entirety on grounds that the automobile dealership was not licensed as a secondhand automobile dealer at the time it purported to sell to defendant the used car at issue in this action and, consequently, according to defendant the contract of sale is void, and plaintiff lacks standing to sue for relief in connection with the purported sale.
Defendant further moves to dismiss this case on the grounds that plaintiff did not have title to the used car at the time it purported to sell it to defendant and, consequently, the purported sale is therefore void.[1]
In plaintiffs opposing papers, it concedes that its New York City Department of Consumer Affairs (NYCDCA) secondhand automobile dealers’ license expired on July 31, 1999 and it did not timely renew until October 18, 1999. Plaintiff, however, argues that the two-month lapse in its license should be excused because it has been in business for more than 20 years and has always met its obligation of being a fully licensed business and because the delay was purportedly caused by its business moving to a different address.
Moreover, plaintiff argues that even if it did not have a valid New York City license[2] at the time it entered into contract with defendant, it nevertheless has standing to recover its down payment from the defendant because it is a certified *853 dealer registered with the New York State Department of Motor Vehicles (NYSDMV). Specifically, plaintiff argues that the NYCDCA license is contingent upon compliance with the laws of the State of New York and therefore it is licensed and controlled by the NYSDMV. Hence, plaintiff alleges that its failure to be licensed by NYCDCA is not a basis to preclude it from bringing this action or declare the sale contract null and void.
Plaintiff additionally argues that as a certified dealer it had title of the vehicle when it acquired ownership of the vehicle and need not apply for a New York State certificate of title.
The determining issue before this Court, therefore, is whether a secondhand dealer who sues a “consumer” may circumvent New York City’s licensing requirement by complying solely with New York State’s certification and be allowed to amend its complaint to plead its State certification. The Court finds it cannot.
Factual Background
By lease dated September 18, 1996 between plaintiff as lessor and defendant as lessee, defendant leased a 1997 Toyota Avalon sedan from plaintiff. As the conclusion of the three-year lease term approached, the parties agreed to extend the lease for an additional month, that is, through October 18, 1999, and to meet to work out terms for defendant Zelig to lease or purchase a car. Defendant mailed the additional month’s lease payment on September 16, 1999.
The meeting between plaintiff and defendant took place at plaintiffs dealership on September 28, 1999. At that time, the parties agreed that defendant would purchase from plaintiff the 1997 Toyota Avalon sedan that defendant had, for the prior three years, leased from plaintiff. The parties are in agreement that this contract of sale was signed on September 28, 1999. Pursuant to the sales contract defendant was obligated to pay a down payment of $4,000.
Plaintiff “rolled over” defendant’s $1,500 security deposit on her automobile lease to pay a portion of the $4,000 down payment allegedly due on the purchase of the car. The $1,500 security deposit was applied by plaintiff to the $4,000 down payment, leaving a $2,500 down payment due. It was agreed by and between plaintiff and defendant that the defendant would return the next day with the $2,500 balance due on the down payment and that defendant could remain in possession of the vehicle. The defendant never returned and kept possession of the vehicle.
*854 Discussion
The business and licensing provisions of title 20 of the Administrative Code of the City of New York and title 6 of the Rules of the City of New York were enacted to safeguard and protect consumers against fraudulent practices. Specifically, Administrative Code § 20-265 provides that it is unlawful for any person to act as a secondhand automobile dealer without a license. Moreover, applicants for a dealer in secondhand articles license and a secondhand automobile dealers’ license must consent to being fingerprinted and submit a photograph so that their criminal history may be checked (Administrative Code § 20-266 [c]; 6 RCNY 1-01). These stringent regulations came as a result of the historical connection to trafficking in and the sale of stolen property in the automobile dealership industries (New York Shredding Corp. v New York City Dept. of Investigation, 184 Misc 2d 174 [Sup Ct, NY County 2000]).
Once a license is granted, the licensee is subject to regulations requiring, inter alia, the display of signs, the labeling of articles, furnishing a bond to the City, maintaining accurate records of purchase and sales and maintaining a “police book” which contains information subject to inspection without notice. (Administrative Code § 20-273; 6 RCNY 2-101, 2-103.) The license is valid for a two-year term and an application for renewal requires the submission of additional information concerning the licensee and the business. (6 RCNY 1-02.) However, if the license renewal is filed 60 days or more after the expiration date of such license the renewal shall be treated as a new license application. (6 RCNY 1-09.) Furthermore, the City ordinance also provides that when the licensee moves its business to a different location, it is required to notify NYC-DCA in writing within 10 days of the change of address. (6 RCNY 1-08.) Failure to abide by these rules and to continue to operate as an unlicensed business in New York City is a misdemeanor. (Administrative Code § 20-401 [1].)
In the instant case, plaintiff does not dispute that its NYC-DCA secondhand automobile dealers’ license operating as B & L Toyota, Inc., expired on July 31, 1999 nor does it dispute that its business was unlicensed by NYCDCA at the time it entered into the sales contract, i.e., September 28, 1999, or that it took defendant 79 days to renew.
Plaintiff’s plea to this Court is to excuse its unlicensed status for the two-month lapse by judicially administering retroactive application of the alleged renewal license which became effective October 18, 1999.
*855 The Administrative Code speaks to the issue of retroactive application of late renewals[3] only to the extent that if an applicant attempts to renew its expired license more than 60 days after the expiration date, the renewal application is considered a new application. The basis for plaintiffs contention here is that NYCDCA kept the original expiration date that the previous license had, as if the renewal was timely. This Court finds plaintiffs arguments unpersuasive.
Plaintiffs late renewal, by operation of law, automatically converted the renewal application to an application for a new license since more than 60 days had lapsed from the date of expiration. This conversion did not recognize and, in fact, terminated any tenuous covering of the expired license during the two-month lapse that a renewal could have possibly offered. This is evidenced by the fact that NYCDCA did not adjust the date on the new license to encompass and include the entire unlicensed period and, farther, it did not keep the original license number, which stays with the business upon timely renewal.
The protective purposes of the Administrative Code and the importance it places on businesses being duly licensed when transacting with consumers is further enhanced by additional protections set forth in CPLR 3015 (e).
Pursuant to CPLR 3015 (e), “Where the plaintiffs cause of action against a consumer arises from the plaintiffs conduct of a business which is required by state or local law to be licensed by the department of consumer affairs of the City of New York * * * the complaint shall allege, as part of the cause of action, that plaintiff is duly licensed.”
The legislative purpose in enacting CPLR 3015 (e) was not to strengthen business rights, but to benefit consumers by shifting the burden from the consumer to the business to establish that the business was in fact licensed. The Sponsors’ Memoranda explain that the statute was introduced in the belief that CPLR 3015 (e)’s affirmative pleading requirement would provide additional protection to consumers, increase incentives for businesses to comply with licensing requirements and help raise revenue. (See, letter of Senator Halperin to Governor’s Counsel, July 21, 1983 and letter of Assemblyman Dunne to *856 Governor’s Counsel, July 21, 1983, Bill Jacket, L 1983, ch 817; see also, Todisco v Econopouly, 155 AD2d 441, 442 [2d Dept 1989]; Zandell v Zerbe, 139 Misc 2d 737, 741 [Civ Ct, NY County 1988].) Allowing the plaintiff in this case to amend its complaint to plead the new license when such license was not in effect when the purported contract of sale occurred would defeat these goals, and those underlying the provisions of the Administrative Code by permitting businesses to operate without the necessity of acquiring a license or the timely renewal of its license.
The Legislature is presumed to be aware of the law in existence at the time of an enactment and to have abrogated the common law only to the extent that the clear import of the language of the statute requires (Arbegast v Board of Educ., 65 NY2d 161, 169 [1985]). The Attorney General’s Memorandum to the Governor supporting the bill highlighted the case law precluding recovery by an unlicensed business (see, Mem of Attorney General to Governor, July 21, 1983, Bill Jacket, L 1983, ch 817) and there is nothing in the language of the legislative history of CPLR 3015 (e) suggesting an intent by the Legislature to weaken this protection or expand the rights of unlicensed businesses. Indeed, the protective purposes of the statute and the various licensing laws which CPLR 3015 (e) addresses would be undermined by overturning this body of case law and validating a sales contract during the period the business was unlicensed. Allowing the plaintiff in this case to plead the new license, after the contract of sale was entered into, affords none of the consumer protections contained in these regulations.
Moreover, it would appear that plaintiff’s argument of its good-faith renewal efforts is disingenuous. Plaintiff failed to show the Court, through its papers, that it complied with NYC-DCA regulations concerning notice to the agency upon moving its business to another location by submitting its change of address in writing within 10 days. Plaintiff’s proof of compliance on this particular issue would have been pertinent to its good-faith argument.
Further, upon review of the documents and licenses submitted by defendant, which plaintiff does not challenge in its opposing papers, the documents demonstrate that the business name issued on the expired NYCDCA license, i.e., B & L Toyota, Inc., doing business as B & L Toyota, the party which entered into the contract with defendant, is an entirely distinct and separate entity, albeit with a somewhat similar name, *857 from the entity named in the new license, i.e., B & L Toyota Auto Group, doing business as B & L Toyota.[4]
This position is further upheld by a NYCDCA printout dated January 19, 2000 submitted by defendant, which indicates that B & L Toyota, Inc., is “out of business” and is no longer licensed. Plaintiff again does not dispute this fact in its opposing papers.
The Court, therefore, concludes that plaintiff’s noncompliance with the NYCDCA requirements, along with the fact that it acquired a new license for a new business and not a renewal license for the old business, precludes plaintiff from amending the complaint to plead the new license.
Assuming arguendo, however, that B & L Toyota, Inc., doing business as B & L Toyota, is the same entity as B & L Toyota Auto Group, doing business as B & L Toyota, the determining issue before this Court, therefore, is whether a secondhand dealer who sues a “consumer” may circumvent New York City’s licensing requirement by complying solely with New York State’s certification and be allowed to amend its complaint to plead its State certification. The Court finds it cannot.
Municipal Home Rule Law § 10 (1) (a) (12) (b) provides that a county may generally regulate and license occupations and businesses within the county. That same provision recites that the county law will not apply in the areas of cities, villages or towns in the county which have their own regulations or licensing requirements.
In Savarese Gen. Contr. v Mychalczak (272 AD2d 300 [2d Dept 2000]), the plaintiff, a home improvement contractor, *858 licensed by the Town of East Hampton (Town) pursuant to a town ordinance, was precluded to bring an action against a consumer because the plaintiff failed to plead that he was licensed pursuant to a Suffolk County licensing statute applicable to home improvement contractors. In opposition to the motion, the plaintiff claimed it was only required to be licensed by the Town and that a county license was not required. The Appellate Division, Second Department, reversed the lower court and held that plaintiff’s failure to hold a county license could not serve as a basis for dismissal pursuant to CPLR 3015 (e) because plaintiff pleaded that he was licensed by the Town and proffered the relevant annual licenses.
Conversely, in Ellis v Gold (204 AD2d 261 [2d Dept 1994]), where the home improvement contractor was licensed by other governmental agencies, the Court did not entitle the plaintiff contractor to recover on mechanic’s liens for work performed in town from which he had not obtained the required contractor’s license.
Similarly, here, plaintiff did not possess a City license to have engaged in the selling of used automobiles in New York City. The certificate proffered to the Court by plaintiff on December 12, 2000, indicating that it was “certified” or “registered” as a “dealer” under New York’s Vehicle and Traffic Law, is altogether insufficient to prevent the voiding of plaintiff’s contract with defendant or the dismissal of this action. Nor is plaintiff’s alleged compliance with the State certification sufficient to proceed with this action. “Certification” or “registration” as a “dealer” under one statute is entirely separate from, and cannot excuse or waive, the legal obligation to be licensed under another, entirely separate statute from a different jurisdiction.
The Court, therefore, finds that the plaintiff’s certification from NYSDMV does not obviate the requirement of acquiring a license from the NYCDCA.
The legal consequences of failing to maintain a required license are well known. It is well settled that not being licensed to practice in a given field which requires a license precludes recovery for the services performed, “either pursuant to contract or in quantum meruit” (Charlebois v Weller Assocs., 72 NY2d 587, 593 [1988]; see, Chipouras & Assocs. v 212 Realty Corp., 156 AD2d 549 [2d Dept 1989]; Hammerman v Jamco Indus., 119 AD2d 544, 545 [2d Dept 1986]; Gordon v Adenbaum, 171 AD2d 841 [2d Dept 1991]; see also Chosen Constr. Corp. v Syz, 138 AD2d 284 [1st Dept 1988]; Bujas v Katz, 133 AD2d *859 730 [2d Dept 1987]). This bar against recovery applies to home improvement contractors, architects and engineers, car services, plumbers, sidewalk vendors, and all other businesses— including secondhand automobile dealers — that are required by law to be licensed.
The law does not just bar recovery by unlicensed businesses; it altogether voids a contract between the unlicensed business and its customer. (See, e.g., Primo Constr. v Stahl, 161 AD2d 516 [1st Dept 1990]; Papadopulos v Santini, 159 AD2d 335 [1st Dept 1990] [“the court was warranted in determining that the oral contract entered into between the parties was void and unenforceable due to plaintiffs admitted fáilure to obtain a home improvement license”]; Mortise v 55 Liberty Owners Corp., 102 AD2d 719 [1st Dept 1984], affd 63 NY2d 743 [1984]; Rasmus Constr. Corp. v Nagel, 168 Misc 2d 520, 522 [App Term, 1st Dept 1996] [“home improvement contracts entered into by such unlicensed entities are considered ‘void’”]; Anton Sattler, Inc. v Cummings, 103 Misc 2d 4, 8 [Sup Ct, NY County 1980] [“home improvement contract between respondent and petitioner, an unlicensed contractor, is void as a matter of law (citations omitted)”].)
Moreover, where a business is unlicensed at the time it enters into a contract or at the time it performs the contract, that contract is void and the business is precluded from recovering for such performance, even if it subsequently obtained the requisite license that it previously lacked. (B & F Bldg. Corp. v Liebig, 76 NY2d 689, 693-694 [1990]; Blake Elec. Contr. Co. v Paschall, 222 AD2d 264 [1st Dept 1995]; Hanjo Contrs. v Wick, 155 AD2d 304 [1st Dept 1989]; Hammerman v Jamco Indus., 119 AD2d 544 [2d Dept 1986].)
Conclusion
The law is abundantly clear with regard to the various protections and benefits afforded to consumers in transactions conducted in the City of New York by unlicensed businesses. The Court, therefore, grants defendant’s motion to dismiss to the extent that it orders the sales contract to be rescinded, plaintiff is ordered to return the down payment and defendant is directed to give back the used car to plaintiffs dealership. The Court need not address the issue of title as it is deemed moot.

. The facts set forth in defendant’s affirmation in her motion to dismiss are limited solely to the issues of licensing and title. Additional facts relating to defendant’s other defenses include her defense of fraudulent inducement.

. Plaintiff alleges that pursuant to City ordinance pertaining to a violation concerning dealers in secondhand articles the appropriate remedy is a fine or imprisonment and not nullification of a sale contract.

. More fundamentally, the failure of a legislative body to express its intent in prefatory language is irrelevant when the intent of the legislative body in question can easily be inferred from the plain language of the substantive provisions of the enactment. (See, Goodell v Jackson, 20 Johns 693; McKinney’s Cons Laws of NY, Book 1, Statutes § 122.)

. A corporation cannot, except as authorized by law, change its own name either directly or by the user. (Scarsdale Publ. Co. — Colonial Press v Carter, 63 Mise 271 [1909].) A corporation may change its name by amendment to the certificate of incorporation (Business Corporation Law § 801 [b] [1]), which is effected by executing and filing with the Department of State a certificate of amendment setting forth the change of name. (Business Corporation Law § 801 [a] [1].)
To determine whether plaintiff in this case changed its name as authorized by law or to determine whether B & L Toyota, Inc. and B & L Toyota Auto Group are one and the same corporation are issues, however, for the trier of fact.
Nevertheless, it is also important to note that, in the instant case, plaintiff executed the sales contract under its assumed business name B & L Toyota. It would appear that the purported new business entity also carried over the very same assumed business name. There is no proof in plaintiff’s papers that it was licensed pursuant to General Business Law § 130 to transact business under its assumed name.